# EXHIBIT I

HONORABLE BARBARA J. ROTHSTEIN

1

2

3

4

5

6

7        UNITED STATES DISTRICT COURT
        WESTERN DISTRICT OF WASHINGTON
                AT SEATTLE
8

9   WSOU INVESTMENTS, LLC d/b/a BRAZOS
    LICENSING AND DEVELOPMENT, a            No. 2:20-cv-01878-BJR
    Delaware limited liability company,
10                                          **PLAINTIFF'S DISCLOSURE OF**
                        Plaintiff,          **ASSERTED CLAIMS AND**
11                                          **INFRINGEMENT CONTENTIONS**
        v.
12
    F5 NETWORKS, INC., a Washington
13  Corporation,

14                      Defendant.

15          Plaintiff WSOU INVESTMENTS, LLC ("Plaintiff" or "WSOU") hereby serves its

16  Disclosure of Asserted Claims and Infringement Contentions ("Infringement Contentions") on

17  Defendant F5 NETWORKS, INC. ("Defendant" or "F5").

18              I.      **DISCLOSURE OF ASSERTED CLAIMS**

19          Plaintiff currently asserts that the Defendant infringes the following claims of U.S. Patent

20  No. 7,953,884 (the "'884 Patent," "Asserted Patent," or "Patient-in-Suit"):  Claims 11, 12, 14, and

21  17 (the "Asserted Claims").

22          The foregoing is based upon Plaintiff's research and analysis to date, without the benefit

23  of discovery.  Plaintiff reserves the right to add, delete, substitute or otherwise amend this list of

24  Asserted Claims based on discovery or other circumstances, in a manner consistent with the

25  Federal Rules of Civil Procedure, local rules, and standing orders.

**CORR CRONIN LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

## II.    **INFRINGEMENT CONTENTIONS**

For each Asserted Claim, Plaintiff identifies the following Accused Instrumentalities of which it is currently aware.  The identification of Accused Instrumentalities is based on Plaintiff's research and analysis to date, without the benefit of discovery from the Defendant.  Plaintiff reserves the right to add, delete, substitute or otherwise amend this list of Accused Instrumentalities based on discovery or other circumstances, in a manner consistent with the Federal Rules of Civil Procedure, local rules, and standing orders.

The Accused Instrumentalities include, without limitation, the following:

- F5 Traffix Signaling Delivery Controllers, F5 VIPRION Platform and products, and F5 BIG-IP iSeries Platform and products, including all past, current and future iterations and versions of the foregoing products and services.

- All past, current and future F5 products and services that operate in the same or substantially similar manner as the specifically identified products and services above and described in Exhibit 1.

- All past, current and future F5 products and services that have the same or substantially similar features as the specifically identified products and services above and described in Exhibit 1.

Plaintiff's infringement contentions apply to the Accused Instrumentalities as well as all other past, current and future hardware and software products and services developed, made, used, offered for sale, sold, imported, and provided by F5 that contain or make use of the Patented Technology.[1]

---

[1]  "Patented Technology" means all technologies described in the claims of the Patent-in-Suit, including, but not limited to, resource management and blocking of calls in case of overload, and using Diameter protocol for resource management, including auditing and overload control.

PLAINTIFF'S DISCLOSURE OF ASSERTED CLAIMS AND
INFRINGEMENT CONTENTIONS– 2
(CASE NO. 2:20-cv-01878-BJR)

**CORR CRONIN LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1          Further, Exhibit 1, which is attached hereto and incorporated by reference, is an exemplary

2     infringement claim chart identifying specifically where each limitation of each Asserted Claim is

3     found within each Accused Instrumentality or practiced by each Accused Instrumentality.

4          Plaintiff asserts that Defendant has directly infringed and continues to directly infringe the

5     Asserted Claims literally through the Accused Instrumentalities by making, using, offering for

6     sale, and/or selling, or importing into the United States the Accused Instrumentalities.  To the

7     extent that Defendant alleges that one or more limitations of the Asserted Claims are not literally

8     found in the Accused Instrumentalities, Plaintiff alleges that such limitations are found in or

9     practiced by the Accused Instrumentalities under the doctrine of equivalents.  Any differences

10    alleged to exist between any of the Asserted Claims and any of the Accused Instrumentalities are

11    insubstantial and each Accused Instrumentality also meets each limitation under the doctrine of

12    equivalents as the identified features of the Accused Instrumentality performs substantially the

13    same function in substantially the same way to achieve substantially the same result as the

14    corresponding claim limitation.

15         Plaintiff further asserts that Defendant has indirectly infringed and continues to indirectly

16    infringe by actively inducing and contributing to infringement of one or more of the claims of the

17    Asserted Patent through the Accused Instrumentalities.  Plaintiff also asserts that these third-

18    parties directly infringe at least one or more of the claims of the Asserted Patent through the use

19    of, implementation of, and/or integration with one or more of the Accused Instrumentalities.

20         For example, Defendant has actively induced infringement by encouraging the use of the

21    Accused Instrumentalities (*e.g.,* F5 Traffix Signaling Delivery Controllers; F5 VIPRION Platform

22    and products; F5 BIG-IP iSeries platform and products) in ways that infringe this claim. Defendant

23    knew or should have known that such encouragement would induce infringement.  Defendant has

24    taken active steps with the specific intent to encourage and cause others to use each Accused

25    Instrumentality in ways that infringe this claim. Such active steps by Defendant with specific

PLAINTIFF'S DISCLOSURE OF ASSERTED CLAIMS AND
INFRINGEMENT CONTENTIONS– 3
(CASE NO. 2:20-cv-01878-BJR)

**CORR CRONIN LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1  intent to induce infringement have included, among other things, advertising, promoting,

2  marketing, making available for use, offering to sell, and/or selling the Accused Instrumentalities

3  to others; encouraging and influencing others to import, offer to sell, and/or sell the Accused

4  Instrumentalities; directing and instructing others to use the Accused Instrumentalities in

5  infringing ways; and by providing the Accused Instrumentalities to others, including, but not

6  limited to, service providers and network operators.  F5 has performed the aforementioned active

7  steps with the knowledge of the Asserted Patent at least as of the date when a complaint was filed

8  in the Eastern District of Virginia (Case Nos. 3:20-cv-00856 and 1:20-cv-01331).  F5 has known

9  or should have known that the acts it has induced constitute infringement because, for instance, it

10  has been aware that network operators and service providers that purchase the Accused

11  Instrumentalities  will  use  them,  resulting  in  direct  infringement.  (*See,  e.g.,*

12  https://techdocs.f5.com/content/kb/en-us/products/traffix-sdc/manuals/product/sdc-user-5-1-

13  0/_jcr_content/pdfAttach/download/file.res/sdc-user-5-1-0.pdf,  Exhibit  A;  Exhibits  B-D;

14  https://techdocs.f5.com/content/kb/en-us/products/traffix-sdc/manuals/product/sdc-product-

15  description-4-4-0/_jcr_content/pdfAttach/download/file.res/sdc-product-description-4-4-0.pdf,

16  Exhibit E.)

17      Further, for instance, F5 BIG-IP Policy Enforcement Manager (PEM), F5 VIPRION

18  platform and products, and F5 BIG-IP iSeries platform and products are known by F5 to be

19  especially made or especially adapted for use to infringe the Asserted Patent, and are not staple

20  articles or commodity of commerce suitable for substantial non-infringing uses.  Defendant

21  contributes to the infringement of the Asserted Patent by making available for use, offering for

22  sale, selling, and/or importing the Accused Instrumentalities to third parties, who use the Accused

23  Instrumentalities and/or practice one or more claims of the Asserted Patent.  (*See, e.g.,*

24  https://techdocs.f5.com/content/kb/en-us/products/traffix-sdc/manuals/product/sdc-user-5-1-

25  0/_jcr_content/pdfAttach/download/file.res/sdc-user-5-1-0.pdf,  Exhibit  A;  Exhibits  B-D;

PLAINTIFF'S DISCLOSURE OF ASSERTED CLAIMS AND
INFRINGEMENT CONTENTIONS– 4
(CASE NO. 2:20-cv-01878-BJR)

**CORR CRONIN LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

https://techdocs.f5.com/content/kb/en-us/products/traffix-sdc/manuals/product/sdc-product-description-4-4-0/_jcr_content/pdfAttach/download/file.res/sdc-product-description-4-4-0.pdf, Exhibit E.)  Moreover, F5 has had notice of the Asserted Patent at least as of the filing of the Complaint in the Eastern District of Virginia.

These Infringement Contentions, including Exhibit 1, are based upon publicly-available information, and Plaintiff's research and analysis to date.  The Accused Instrumentalities involve confidential, proprietary designs that are not publicly available, and Defendant has not yet provided discovery.  Discovery is ongoing, and Plaintiff anticipates that the subject matter of these infringement contentions will be the subject of expert discovery.  Discovery will provide evidence of Defendant's infringement, may lead to the discovery of additional instances of infringement, and may also enable identification of additional claims that are infringed by Defendant.  Plaintiff reserves the right to add, delete, substitute, or otherwise further amend these Infringement Contentions based on discovery or other circumstances, in a manner consistent with the Federal Rules of Civil Procedure, local rules, and standing orders.  Plaintiff explicitly reserves the right to further modify and/or supplement these contentions with additional or different theories and/or additional or different evidence.

## III.  PRIORITY DATE

Each of the Asserted Claims of the '884 Patent is entitled to a priority date of no later than December 29, 2006.  The subject matter described by the Asserted Claims, however, may have been conceived and reduced to practice prior to this priority date. Plaintiff's research and analysis is ongoing and Plaintiff reserves the right to assert that the claims are entitled to a priority date that is earlier than the above date.

PLAINTIFF'S DISCLOSURE OF ASSERTED CLAIMS AND
INFRINGEMENT CONTENTIONS– 5
(CASE NO. 2:20-cv-01878-BJR)

**CORR CRONIN LLP**
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

1    DATED this 8th day of April, 2021.

2                                    CORR CRONIN LLP

3
                                     *s/ Eric A. Lindberg*
4                                    Blake Marks-Dias, WSBA No. 28169
                                     Eric A. Lindberg, WSBA No. 43596
5                                    1001 Fourth Avenue, Suite 3900
                                     Seattle, WA 98154
6                                    (206) 625-8600 Phone
                                     (206) 625-0900 Fax
7                                    bmarks-dias@corrcronin.com
                                     elindberg@corrcronin.com
8
                                     Jonathan K. Waldrop  (Admitted *pro hac vice*)
9                                    jwaldrop@kasowitz.com
                                     Darcy L. Jones  (Admitted *pro hac vice*)
10                                   djones@kasowitz.com
                                     Marcus A. Barber (Admitted *pro hac vice*)
11                                   mbarber@kasowitz.com
                                     John W. Downing  (Admitted *pro hac vice*)
12                                   jdowning@kasowitz.com
                                     Heather S. Kim (Admitted *pro hac vice*)
13                                   hkim@kasowitz.com
                                     Jack Shaw  (Admitted *pro hac vice*)
14                                   jshaw@kasowitz.com
                                     ThucMinh Nguyen (Admitted *pro hac vice*)
15                                   tnguyen@kasowitz.com
                                     KASOWITZ BENSON TORRES LLP
16                                   333 Twin Dolphin Drive, Suite 200
                                     Redwood Shores, California 94065
17                                   Telephone: (650) 453-5170

18                                   Paul G. Williams (Admitted *pro hac vice*)
                                     pwilliams@kasowitz.com
19                                   KASOWITZ BENSON TORRES LLP
                                     1230 Peachtree Street N.E., Suite 2445
20                                   Atlanta, Georgia 30309
                                     Telephone: (404) 260-6080
21

22                                   *Attorneys for Plaintiff*

23

24

25

PLAINTIFF'S DISCLOSURE OF ASSERTED CLAIMS AND
INFRINGEMENT CONTENTIONS– 6
(CASE NO. 2:20-cv-01878-BJR)

## CERTIFICATE OF SERVICE

The undersigned certifies as follows:

1.     I am employed at Corr Cronin LLP, attorneys for Plaintiff WSOU Investments, LLC d/b/a Brazos Licensing and Development herein.

2.     On April 8, 2021, I caused a true and correct copy of the foregoing document to be served on the following parties in the manner indicated below:

| | |
|---|---|
| Stevan R. Stark | ☐ Via CM/ECF |
| Ramsey M. Al-Salam | ☐ Via U.S. Mail |
| Perkins Coie LLP | ☐ Via Messenger Delivery |
| 1201 Third Avenue, Suite 4900 | ☐ Via Overnight Courier |
| Seattle, WA 98101-3099 | ☒ Via electronic mail |
| Tel: (206) 359-8000 | |
| Fax: (206) 359-9000 | |
| sstark@perkinscoie.com | |
| ralsalam@perkinscoie.com | |
| *Attorneys for Plaintiff WSOU Investments,* | |
| *LLC d/b/a Brazos Licensing and* | |
| *Development* | |

| | |
|---|---|
| Shane Brun (Admitted *Pro Hac Vice)* | ☐ Via CM/ECF |
| King & Spalding LLP | ☐ Via U.S. Mail |
| 601 S California Ave, Suite 100 | ☐ Via Messenger Delivery |
| Palo Alto, CA 94304 | ☐ Via Overnight Courier |
| Tel: (415) 318-1245 | ☒ Via electronic mail |
| sbrun@kslaw.com | |
| *Attorneys for Plaintiff WSOU Investments,* | |
| *LLC d/b/a Brazos Licensing and* | |
| *Development* | |

| | |
|---|---|
| Angela C. Tarasi (Admitted *Pro Hac Vice)* | ☐ Via CM/ECF |
| King & Spalding LLP | ☐ Via U.S. Mail |
| 1400 16th Street | ☐ Via Messenger Delivery |
| 16 Market Square, Suite 400 | ☐ Via Overnight Courier |
| Denver, CO 80202 | ☒ Via electronic mail |
| Tel: (720) 535-2300 | |
| atarasi@kslaw.com | |
| *Attorneys for Plaintiff WSOU Investments,* | |
| *LLC d/b/a Brazos Licensing and* | |
| *Development* | |

1    I declare under penalty of perjury under the laws of the state of Washington that the foregoing is true and correct.

2    DATED:  April 8, 2021, at Seattle, Washington.

3

4                                                    *s/ Monica Dawson*
                                                    Monica Dawson

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

PLAINTIFF'S DISCLOSURE OF ASSERTED CLAIMS AND
INFRINGEMENT CONTENTIONS– 8
(CASE NO. 2:20-cv-01878-BJR)

CORR CRONIN LLP
1001 Fourth Avenue, Suite 3900
Seattle, Washington 98154-1051
Tel (206) 625-8600
Fax (206) 625-0900

**Exhibit 1 to**
**WSOU Investments, LLC's**
**Infringement Contentions**

**Infringement Claim Chart of U.S. Patent No. 7,953,884 (the "Asserted Patent")**
**Claims 11, 12, 14, and 17 (the "Asserted Claims")**

The Accused Instrumentalities include, without limitation, F5 Traffix Signaling Delivery Controllers, VIPRION Platform and products, F5 BIG-IP iSeries Platform and products; all past, current and future F5 products and services that operate in the same or substantially similar manner as the specifically identified products and services; and all past, current and future F5 products and services that have the same or substantially similar features as the specifically identified products and services.

WSOU Investments, LLC ("WSOU" or "Plaintiff") contends that F5 Networks, Inc. ("F5 Networks," "F5" or "Defendant"), including F5's employees, directly infringes each of the Asserted Claims, either literally or under the doctrine of equivalents. WSOU also contends that F5 has indirectly infringed and continues to indirectly infringe by contributing to and actively inducing infringement of one or more of the Asserted Claims.

WSOU does not intend this exemplary claim chart to be limiting, and WSOU reserves its rights to pursue other accused instrumentalities, patent claims, evidence, and infringement arguments in this case.

| Exhibit(s) | Bates Numbers | Link |
|---|---|---|
| Exhibit A | WSOU-F5-0000255 – WSOU-F5-0000570 | https://techdocs.f5.com/content/kb/en-us/products/traffix-sdc/manuals/product/sdc-user-5-1-0/_jcr_content/pdfAttach/download/file.res/sdc-user-5-1-0.pdf |
| Exhibit B | WSOU-F5-0000682 – WSOU-F5-0000685 | https://www.f5.com/products/big-ip-services/viprion-chassis |
| Exhibit C | WSOU-F5-0002032 – WSOU-F5-0002043 | https://www.f5.com/pdf/products/viprion-overview-ds.pdf |
| Exhibit D | WSOU-F5-0000012 – WSOU-F5-0000016 | https://support.f5.com/csp/article/K14302 |
| Exhibit E | WSOU-F5-0000060 – WSOU-F5-0000125 | https://techdocs.f5.com/content/kb/en-us/products/traffix-sdc/manuals/product/sdc-product-description-4-4-0/_jcr_content/pdfAttach/download/file.res/sdc-product-description-4-4-0.pdf |
| Exhibit F | WSOU-F5-0000017 – WSOU-F5-0000041 | https://techdocs.f5.com/content/kb/en-us/products/traffix-sdc/manuals/product/sdc-feature-list-4-4-0/_jcr_content/pdfAttach/download/file.res/sdc-feature-list-4-4-0.pdf |
| Exhibit G | WSOU-F5-0000126 – WSOU-F5-0000254 | https://techdocs.f5.com/content/kb/en-us/products/traffix-sdc/releasenotes/product/relnote-sdc-5-1-0/_jcr_content/pdfAttach/download/file.res/sdc-relnote-5-1-0.pdf |
| Exhibit H | WSOU-F5-0000001 – WSOU-F5-0000011 | https://www.f5.com/pdf/products/diameter-signaling-delivery-controller-product-brochure.pdf |
| Exhibit I | WSOU-F5-0000042 – WSOU-F5-0000059 | https://techdocs.f5.com/content/kb/en-us/products/traffix-sdc/manuals/product/sdc-overload-control-overview-4-4-0/_jcr_content/pdfAttach/download/file.res/sdc-overload-control-overview-4-4-0.pdf |
| Exhibit J | WSOU-F5-0000571 – WSOU-F5-0000679 | https://techdocs.f5.com/content/kb/en-us/products/traffix-sdc/manuals/product/sdc-virtual-openstack-installation-upgrade-maintenance-5-1-0/_jcr_content/pdfAttach/download/file.res/sdc-virtual-openstack-installation-upgrade-maintenance-5-1-0.pdf |
| Exhibit K | WSOU-F5-0000680 – WSOU-F5-0000681 | https://support.f5.com/csp/article/K14402 |

| Claims | Infringement Analysis with Exemplary Infringement Evidence |
|---|---|
| **Claim 11** | |
| **11Pre.**<br>A method for border gateway resource management, comprising: | On information and belief, the Accused Instrumentalities (*e.g.,* F5 Traffix Signaling Delivery Controllers; VIPRION Platform and products; F5 BIG-IP iSeries platform and products) enable border gateway resource management, as shown by the following exemplary evidence.<br><br>For instance, the Accused Instrumentalities ensure that applications are always secure and perform the way they should—in any environment and on any device.  F5 Traffix Signaling Delivery Controller (SDC) solution enables routing and exchange of data between different protocols, such as Diameter, SS7, HTTP, and others using an advanced transformation and flow management engine.<br><br>By way of examples, F5 Traffix Signaling Controller (SDC) has software version sdc5.1_31_4-5.1_31-4.x86_64.rpm, as shown below.<br><br>## 1. Release Information<br><br>### 1.1 Product Software Versions<br>This build consists of the following F5 SDC product software packages:<br><br>• Installer: salt-srv5.1_31-1.noarch.rpm<br><br>• SDC Software: sdc5.1_31_4-5.1_31-4.x86_64.rpm<br><br>• Tripo: 1.5.0-199.x86_64.rpm<br><br>• File Server: 1.0.0-41.x86_64.rpm<br><br>### 1.2 ISO Image Information (Bare Metal Installations)<br>The F5 SDC software for bare metal installations is packaged and supplied as an ISO image.<br><br>https://techdocs.f5.com/content/kb/en-us/products/traffix-sdc/releasenotes/product/relnote-sdc-5-1-0/_jcr_content/pdfAttach/download/file.res/sdc-relnote-5-1-0.pdf, Exhibit G,<br><br>F5 also provides at least three types of SDC software releases namely Major Release, Minor Release, and Maintenance Release, as shown below. |

| Claims | Infringement Analysis with Exemplary Infringement Evidence |
|--------|-----------------------------------------------------------|
| | **Policy Information**<br><br>**Release types**<br><br>F5 provides the following types of SDC software releases:<br><br>• Major Release: The most recent commercially available version of the software that contains changes in the software that comprise substantial new functions or characteristics. Major releases are distinguished by a new version number and provide new feature functionality (e.g., from version 4.2 to 5.0).<br>• Minor Release: Commercial available bug fix releases and/or minor enhancements (including enhancements resulting from customer requests) to the major release software, normally with the same major version number as the latest major release version it is based on (e.g., from version 4.1 to 4.2).<br>• Maintenance Release: Commercially available bug fix releases to the software, normally with the same version number as the latest commercially available version with a different build number (e.g., from version 5.1 build 98 to 5.1 build 99).<br><br>https://support.f5.com/csp/article/K14402, Exhibit K<br><br>SDC comprises the hardware and software required to handle high traffic load and provide high availability.  SDC can be virtually installed, upgraded and maintained.  For SDC to be deployed necessary hardware conditions are to be fulfilled.  For instance, F5 advertises that the SDC runs on off-the-shelf hardware, as shown below.<br><br>This document provides the procedures of how to virtually install, upgrade, and maintain an SDC deployment. It also provides an overview of how the SDC works with an Orchestrator.<br><br>https://techdocs.f5.com/content/kb/en-us/products/traffix-sdc/manuals/product/sdc-virtual-openstack-installation-upgrade-maintenance-5-1-0/_jcr_content/pdfAttach/download/file.res/sdc-virtual-openstack-installation-upgrade-maintenance-5-1-0.pdf, Exhibit J. |

The installation and maintenance processes install, configure, and enable the necessary hardware, network infrastructure, and site components needed to process F5® Traffix® Signaling Delivery Controller™ (SDC) traffic.

In this release, the installation and maintenance processes are performed using a Cloud Orchestrator. This document describes all procedures as they relate to the installation and maintenance processes using a Cloud Orchestrator.

In virtualized deployments, REST APIs are used to communicate between the Orchestrator and the SDC vInstaller to install, maintain, and upgrade an SDC site.

https://techdocs.f5.com/content/kb/en-us/products/traffix-sdc/manuals/product/sdc-virtual-openstack-installation-upgrade-maintenance-5-1-0/_jcr_content/pdfAttach/download/file.res/sdc-virtual-openstack-installation-upgrade-maintenance-5-1-0.pdf, Exhibit J

- Supports SCTP, TCP, TLS, IP-Sec, IPv4, IPv6
- Runs on off-the-shelf hardware

https://www.f5.com/pdf/products/diameter-signaling-delivery-controller-product-brochure.pdf, Exhibit A

As another example, F5 Traffix Signaling Delivery Controller (SDC) is a modular signaling platform that provides a flexible and robust solution for control plane connectivity. The SDC provides advanced Diameter Gateway, Diameter Load Balancer, and Diameter Router solutions, consolidated on a single unified platform, as shown by exemplary evidence below.

The F5® Traffix® Signaling Delivery Controller™ (SDC) is a modular signaling platform that provides a flexible and robust solution for the emerging control plane connectivity challenges. The SDC is shown in *Figure 1*.

The SDC was designed to meet the demanding requirements posed by the growing volume of signaling traffic and the complexity of connectivity and signaling in LTE and IMS networks with advanced Diameter Gateway, Diameter Load Balancer, and Diameter Router solutions, consolidated on a single, unified platform.



Fig. 1

Source: https://techdocs.f5.com/content/kb/en-us/products/traffix-sdc/manuals/product/sdc-product-description-4-4-0/_jcr_content/pdfAttach/download/file.res/sdc-product-description-4-4-0.pdf, Exhibit E

| Claims | Infringement Analysis with Exemplary Infringement Evidence |
|---|---|
| | F5 SDC can be configured as the border gateway and can connect the client peers to the server peers. The client peers are the components that consume the Authentication, Authorization and Accounting (AAA) services, and the server peers are the providers for the AAA services such as the Diameter protocol, as shown below. <br><br> **Figure 4: SDC Network Topology** <br><br>  <br><br> https://techdocs.f5.com/content/kb/en-us/products/traffix-sdc/manuals/product/sdc-user-5-1-0/_jcr_content/pdfAttach/download/file.res/sdc-user-5-1-0.pdf, Exhibit A |

7

| Claims | Infringement Analysis with Exemplary Infringement Evidence |
|--------|-----------------------------------------------------------|
|        | **Table 7: SDC Network Topology Legend**<br><br>{table below}<br><br>https://techdocs.f5.com/content/kb/en-us/products/traffix-sdc/manuals/product/sdc-user-5-1-0/_jcr_content/pdfAttach/download/file.res/sdc-user-5-1-0.pdf, Exhibit A<br><br>F5 SDC provides mechanisms for resource management and congestion control that protect both the SDC and the connected peer nodes from overload conditions.  These mechanisms are based on message-oriented flow control, traffic shaping algorithms, and load-shedding algorithms, as shown below. |

| Number | Topology Object | Description |
|--------|-----------------|-------------|
| 1. | SDC | An instance of SDC in the Cluster (CPF + FEP). |
| 2. | Client Peer | A client node in the NGN network that consumes AAA services. |
| 3. | Server Peers | A server node in the NGN network that provides AAA services. |
| 4. | Pool | A group of peers |
| 5. | Cluster | A group of SDCs used to provide translation and connectivity services and support high availability. |

| | | |
|---|---|---|
| | Overload and Congestion Control | SDC provides multiple mechanisms for resource management and congestion control that protect SDC and the connected Peer nodes from overload conditions, by controlling and limiting the resources usage and allocation, e.g. controlling the incoming/outgoing message/traffic rate. The implemented methods are based on message oriented flow control, traffic shaping algorithms and load shedding algorithms. |

https://techdocs.f5.com/content/kb/en-us/products/traffix-sdc/manuals/product/sdc-feature-list-4-4-0/_jcr_content/pdfAttach/download/file.res/sdc-feature-list-4-4-0.pdf, Exhibit F

In addition to direct infringement of this claim by F5 (including its employees), F5 also has indirectly infringed and continues to indirectly infringe by actively inducing others, including network operators and services providers, to directly infringe this claim by using the Accused Instrumentalities.  For instance, F5 has actively induced infringement by encouraging the use of the Accused Instrumentalities (*e.g.,* F5 Traffix Signaling Delivery Controllers; VIPRION Platform and products; F5 BIG-IP iSeries platform and products) in ways that infringe this claim.  F5 knew or should have known that such encouragement would induce infringement.  Such induced infringement has occurred at least since F5 became aware of the Asserted Patent.  F5 has had knowledge of the Asserted Patent at least since the date when a complaint was filed in the Eastern District of Virginia.  F5 has taken active steps with the specific intent to encourage and cause others to use each Accused Instrumentality in ways that infringe this claim.  Such active steps by F5 with specific intent to induce infringement have included, among other things, advertising, promoting, marketing, making available for use, offering to sell, and/or selling the Accused Instrumentalities to others; encouraging and influencing other companies to import, offer to sell, and/or sell the Accused Instrumentalities; and directing and instructing others to use the Accused Instrumentalities in infringing ways.  F5 has performed the aforementioned active steps with the knowledge of the Asserted Patent at least since the date when a complaint was filed in the Eastern District of Virginia.  F5 has known or should have known that the acts it has induced constitute infringement because, for instance, it has been aware that network operators and service providers that purchase the Accused Instrumentalities will use them, resulting in direct infringement. (*See, e.g.,* https://techdocs.f5.com/content/kb/en-us/products/traffix-sdc/manuals/product/sdc-user-5-1-0/_jcr_content/pdfAttach/download/file.res/sdc-user-5-1-0.pdf, Exhibit A; Exhibits B-D;

| Claims | Infringement Analysis with Exemplary Infringement Evidence |
|---|---|
|  | https://techdocs.f5.com/content/kb/en-us/products/traffix-sdc/manuals/product/sdc-product-description-4-4-0/_jcr_content/pdfAttach/download/file.res/sdc-product-description-4-4-0.pdf, Exhibit E.)<br><br>Further, F5 has indirectly infringed and continues to indirectly infringe this claim by contributing to infringement of this claim.  For instance, components of the Accused Instrumentalities (*e.g.,* F5 BIG-IP Policy Enforcement Manager (PEM); F5 VIPRION platform and products; F5 BIG-IP iSeries platform and products) are known by F5 to be especially made or especially adapted for use to infringe this claim, and each is not a staple article or commodity of commerce suitable for substantial non-infringing uses.  F5 contributes to the infringement of this claim by making available for use, offering for sale, selling, and/or importing the components of the instrumentalities, to third parties, who, for example, use such components to practice this claim.  (*See, e.g.,* https://techdocs.f5.com/content/kb/en-us/products/traffix-sdc/manuals/product/sdc-user-5-1-0/_jcr_content/pdfAttach/download/file.res/sdc-user-5-1-0.pdf, Exhibit A; Exhibits B-D; https://techdocs.f5.com/content/kb/en-us/products/traffix-sdc/manuals/product/sdc-product-description-4-4-0/_jcr_content/pdfAttach/download/file.res/sdc-product-description-4-4-0.pdf, Exhibit E.)  Moreover, F5 has had notice of the Asserted Patent at least as of the filing date of a complaint in the Eastern District of Virginia. |
| **11a.**<br>performing an audit sequence in response to a trigger, the audit sequence includes clearing media resource ports that are not fully connected by implementing an audit extension to a Diameter protocol; | On information and belief, the Accused Instrumentalities (*e.g.,* F5 Traffix Signaling Delivery Controllers; VIPRION Platform and products; F5 BIG-IP iSeries platform and products) enable performing an audit sequence in response to a trigger, the audit sequence includes clearing media resource ports that are not fully connected by implementing an audit extension to a Diameter protocol, as shown by the above exemplary evidence and further exemplary evidence below.<br><br>For instance, F5 SDC can be configured to perform an audit restore sequence in response to the system detected to be overloaded.  Each of the UI actions taken by the SDC's users is documented and registered to the auditing list. The audited actions can be configured to restore the documented configuration of the exact point when the action was performed.  Based on information and belief, the overload status triggers a response to perform an audit sequence, as shown below. |

10

Previously, when the system is overloaded, and you

performed an audit restore (**Administration > Audit >**

**Restore**), some of the configurations may not have been

restored as expected. Now, the audit functionality works

as expected.

https://techdocs.f5.com/content/kb/en-us/products/traffix-sdc/releasenotes/product/relnote-sdc-5-1-0/_jcr_content/pdfAttach/download/file.res/sdc-relnote-5-1-0.pdf, Exhibit G

### 6.1.1 Auditing

Each of the UI actions taken by the SDC's users is documented and registered to the auditing list. You may select any of the audited actions to restore the documented configuration of the exact point in time that the action was performed.

https://techdocs.f5.com/content/kb/en-us/products/traffix-sdc/manuals/product/sdc-user-5-1-0/_jcr_content/pdfAttach/download/file.res/sdc-user-5-1-0.pdf, Exhibit A

Additionally, F5 also has indirectly infringed and continues to indirectly infringe by inducing others, including network operators and services providers, to perform this step. For instance, F5 has actively induced infringement by encouraging the use of the Accused Instrumentalities to perform this step. F5 knew or should have known that such encouragement would induce infringement. Such induced infringement has occurred at least since F5 became aware of the Asserted Patent. F5 has had knowledge of the Asserted Patent at least since the date when a complaint was filed in the Eastern District of Virginia. Such steps by F5 to induce infringement have included F5's advertising, promoting, marketing, making available for use, offering to sell, and/or selling the Accused Instrumentalities to others, and directing and instructing them to use the Accused Instrumentalities to perform this step. Further, by providing the Accused Instrumentalities (*e.g.,* F5 Traffix Signaling Delivery Controllers; VIPRION Platform and products; F5 BIG-IP iSeries platform and products) to consumers, F5 has induced others to perform this step with the knowledge that the acts it has induced constitute infringement because, for instance, F5 has been aware that network operators and services providers will use them, resulting in direct infringement. (*See, e.g.,* https://techdocs.f5.com/content/kb/en-us/products/traffix-sdc/manuals/product/sdc-user-5-1-0/_jcr_content/pdfAttach/download/file.res/sdc-user-5-1-0.pdf, Exhibit A; Exhibits B-D;

11

| Claims | Infringement Analysis with Exemplary Infringement Evidence |
|--------|------------------------------------------------------------|
| | https://techdocs.f5.com/content/kb/en-us/products/traffix-sdc/manuals/product/sdc-product-description-4-4-0/_jcr_content/pdfAttach/download/file.res/sdc-product-description-4-4-0.pdf, Exhibit E.)<br><br>Further, F5 has indirectly infringed and continues to indirectly infringe the claim by contributing to performance of this step.  For instance, components of each Accused Instrumentality are known by F5 to be especially made or especially adapted for use in performing this step, and each is not a staple article or commodity of commerce suitable for substantial non-infringing uses.  F5 contributes to the performance of this step by making available for use, offering for sale, selling, and/or importing components of the Accused Instrumentalities (*e.g.,* F5 Traffix Signaling Delivery Controllers; VIPRION Platform and products; F5 BIG-IP iSeries platform and products) to third parties, who, for example, use such components to perform this step.  (*See, e.g.,* https://www.f5.com/products/big-ip-services, Exhibit A; https://www.f5.com/products/big-ip-services/policy-enforcement-manager, Exhibit B; https://www.f5.com/pdf/products/big-ip-policy-enforcement-manager-datasheet.pdf, Exhibit K; https://www.f5.com/pdf/products/big-ip-platforms-datasheet.pdf, Exhibit M.)  Moreover, F5 has had notice of the Asserted Patent at least as of the filing date of a complaint in the Eastern District of Virginia. |
| | |
| **11b.**<br>detecting an overload status from a overloaded gateway that has taken excess load; | On information and belief, the Accused Instrumentalities (*e.g.,* BIG-IP Policy Enforcement Manager (PEM); F5 VIPRION platform and products; BIG-IP iSeries platform and products) detecting an overload status from a overloaded gateway that has taken excess load, as shown by the above exemplary evidence and further exemplary evidence below.<br><br>For instance, with respect to F5 SDC, client peers are the components that consume the AAA services, and the server peers are the providers for the AAA services such as Diameter protocol.  Multiple instances of SDC can be grouped together in a network, as shown below. |

| Claims | Infringement Analysis with Exemplary Infringement Evidence |
|--------|------------------------------------------------------------|
|        |  Figure 4: SDC Network Topology<br><br>https://techdocs.f5.com/content/kb/en-us/products/traffix-sdc/manuals/product/sdc-user-5-1-0/_jcr_content/pdfAttach/download/file.res/sdc-user-5-1-0.pdf, Exhibit A |

| Claims | Infringement Analysis with Exemplary Infringement Evidence |
|---|---|
| | **Table 7: SDC Network Topology Legend** |

| Number | Topology Object | Description |
|---|---|---|
| 1. | SDC | An instance of SDC in the Cluster (CPF + FEP). |
| 2. | Client Peer | A client node in the NGN network that consumes AAA services. |
| 3. | Server Peers | A server node in the NGN network that provides AAA services. |
| 4. | Pool | A group of peers |
| 5. | Cluster | A group of SDCs used to provide translation and connectivity services and support high availability. |

https://techdocs.f5.com/content/kb/en-us/products/traffix-sdc/manuals/product/sdc-user-5-1-0/_jcr_content/pdfAttach/download/file.res/sdc-user-5-1-0.pdf, Exhibit A

Further, F5 SDC architecture includes several modules to provide context-aware routing, session binding, enhanced congestion, and flow control, support message-oriented protocols for routing and transformation, health monitoring, and overload control, as exemplified below.

**Citation 1 SDC Architecture**



Fig. 2

https://www.f5.com/pdf/products/diameter-signaling-delivery-controller-product-brochure.pdf, Exhibit H

By way of example, F5 SDC can enter an overload status due to many reasons, including signaling storms caused by faulty peers, unexpected memory demands, CPU, or other resource utilization that exceed the engineered capacity of the SDC. The overload control mechanisms implemented in F5 SDC control and limit the resource usage and allocation by controlling the number of incoming/outgoing message requests and traffic rates per destination peer, as exemplified below.

|  | There are multiple possible reasons for overload, such as signaling storms caused by faulty peers, unexpected memory demands, or CPU or other resource utilizations that exceed the engineered capacity of the SDC. The implemented overload control mechanisms assure that in the event of an overload, traffic processing continues with minimal disruption.

These mechanisms control and limit the resource usage and allocation, by controlling the number of incoming/outgoing message requests and traffic rates per destination peer.

https://techdocs.f5.com/content/kb/en-us/products/traffix-sdc/manuals/product/sdc-overload-control-overview-4-4-0/_jcr_content/pdfAttach/download/file.res/sdc-overload-control-overview-4-4-0.pdf, Exhibit I

As a further example, the incoming traffic flows consist of messages sent from the network elements (client or server peers) to F5 SDC. F5 SDC overcomes incoming traffic overload using a sliding window mechanism that enforces the rate limit configured during system setup, as exemplified below. |

Incoming traffic flows are flows in which messages are sent from network elements (client or server peers) to the SDC. The two SDC entry points that receive this incoming traffic (T1 and T3) are illustrated in *Figure 2*. The SDC protects itself from incoming traffic overload using a sliding window mechanism that enforces the rate limit configured during system setup. The SDC further protects itself from excessive traffic by constantly adapting the transport layer configuration to only receive the amount of traffic that can be buffered in the SDC queues.

**Figure 2: Incoming Traffic Received at SDC Entry Points**



https://techdocs.f5.com/content/kb/en-us/products/traffix-sdc/manuals/product/sdc-overload-control-overview-4-4-0/_jcr_content/pdfAttach/download/file.res/sdc-overload-control-overview-4-4-0.pdf, Exhibit I

Additionally, F5 also has indirectly infringed and continues to indirectly infringe by inducing others, including network operators and services providers, to perform this step. For instance, F5 has actively induced infringement by encouraging the use of the Accused Instrumentalities to perform this step. F5 knew or should have known that such encouragement would induce infringement. Such induced infringement has occurred at least since F5 became aware of the Asserted Patent. F5 has had knowledge of the Asserted Patent at least since the date when a complaint was filed in the Eastern District of Virginia. Such steps by F5 to induce infringement have included F5's advertising, promoting, marketing, making available for use, offering to sell, and/or selling the Accused Instrumentalities to others, and directing and instructing them to use the Accused Instrumentalities to perform this step. Further, by providing the Accused Instrumentalities (*e.g.,* F5 Traffix Signaling Delivery Controllers; VIPRION Platform and products; F5 BIG-IP iSeries platform and products) to consumers, F5 has induced others to perform this step with the

| Claims | Infringement Analysis with Exemplary Infringement Evidence |
|---|---|
| | knowledge that the acts it has induced constitute infringement because, for instance, F5 has been aware that network operators and services providers will use them, resulting in direct infringement. (*See, e.g.,* https://techdocs.f5.com/content/kb/en-us/products/traffix-sdc/manuals/product/sdc-user-5-1-0/_jcr_content/pdfAttach/download/file.res/sdc-user-5-1-0.pdf, Exhibit A; Exhibits B-D; https://techdocs.f5.com/content/kb/en-us/products/traffix-sdc/manuals/product/sdc-product-description-4-4-0/_jcr_content/pdfAttach/download/file.res/sdc-product-description-4-4-0.pdf, Exhibit E.) <br><br> Further, F5 has indirectly infringed and continues to indirectly infringe the claim by contributing to performance of this step. For instance, components of each Accused Instrumentality are known by F5 to be especially made or especially adapted for use in performing this step, and each is not a staple article or commodity of commerce suitable for substantial non-infringing uses. F5 contributes to the performance of this step by making available for use, offering for sale, selling, and/or importing components of the Accused Instrumentalities (*e.g.,* F5 Traffix Signaling Delivery Controllers; VIPRION Platform and products; F5 BIG-IP iSeries platform and products) to third parties, who, for example, use such components to perform this step. (*See, e.g.,* https://www.f5.com/products/big-ip-services, Exhibit A; https://www.f5.com/products/big-ip-services/policy-enforcement-manager, Exhibit B; https://www.f5.com/pdf/products/big-ip-policy-enforcement-manager-datasheet.pdf, Exhibit K; https://www.f5.com/pdf/products/big-ip-platforms-datasheet.pdf, Exhibit M.) Moreover, F5 has had notice of the Asserted Patent at least as of the filing date of a complaint in the Eastern District of Virginia. |
| | |
| **11c.** <br> determining a reduction percentage that corresponds with a percentage of calls that will be blocked; and <br><br> **11d.** <br> blocking calls routed through the gateway with respect to the reduction percentage by | On information and belief, the Accused Instrumentalities (*e.g.,* F5 Traffix Signaling Delivery Controllers; VIPRION Platform and products; F5 BIG-IP iSeries platform and products) enable determining a reduction percentage that corresponds with a percentage of calls that will be blocked, and blocking calls routed through the gateway with respect to the reduction percentage by implementing an overload extension to the Diameter protocol, as shown by the above exemplary evidence and further exemplary evidence below. <br><br> By way of an example, when the overload conditions are detected in an F5 SDC, the reduction percentage determines that the number of incoming messages (*e.g.,* calls) are either rejected or discarded (blocked). If message rejection is applied, F5 SDC replies with user-configurable busy Result-Code (*e.g.* DIAMETER_TOO_BUSY), while in case of discard, the message is dropped immediately, and no processing is applied, as shown by the exemplary evidence below. |

| Claims | Infringement Analysis with Exemplary Infringement Evidence |
|---|---|
| implementing an overload extension to the Diameter protocol; | **Overload Control** — When overload conditions are detected, incoming messages are either gracefully rejected or discarded. If message rejection is applied, SDC replies with user configurable busy Result-Code (e.g. DIAMETER_TOO_BUSY), while in case of discard the message is dropped immediately, and no processing is applied.<br><br>https://techdocs.f5.com/content/kb/en-us/products/traffix-sdc/manuals/product/sdc-feature-list-4-4-0/_jcr_content/pdfAttach/download/file.res/sdc-feature-list-4-4-0.pdf, Exhibit F<br><br>Further, incoming rate limits are configured to control the amount of traffic that F5 SDC receives from either a client or server peer. These limits are configured by the number of messages and/or bytes that F5 SDC can receive. This incoming traffic can either be limited per the client or server peer that the traffic is sent from, or per the SDC component that receives the traffic.  F5 SDC can receive the traffic from the peers at any of the two components – the Front End Proxy (FEP) or the Control Plane Function (CPF), as shown below.<br><br>**Figure 2: Incoming Traffic Received at SDC Entry Points**<br> |

### 2.2  Message and Byte Rate Limits

Incoming rate limits are configured to control the amount of traffic that the SDC node receives from either a client or server peer. These limits are configured by the number of messages and/or bytes that the SDC can receive. This incoming traffic can either be limited per the client or server peer that the traffic is sent from, or per the SDC component (FEP/CPF) that receives the traffic.

https://techdocs.f5.com/content/kb/en-us/products/traffix-sdc/manuals/product/sdc-overload-control-overview-4-4-0/_jcr_content/pdfAttach/download/file.res/sdc-overload-control-overview-4-4-0.pdf, Exhibit I

As additional examples, the FEP and CPF are configured with rate limits. The traffic received by the FEP/CPF is monitored and compared against the configured limit. Once the FEP receives more traffic than the configured limit, messages that are sent towards it are not processed.  F5 SDC can either return a busy result code for these messages or discard (block) them.

When configured per peer, traffic received by the specific FEP is monitored per origin peer, and compared against the configured limit.

Once the FEP receives more traffic than the configured limit, messages that are sent towards it are not processed. The SDC can either return a busy result code for these messages or silently discard them.

When configured per peer, traffic received by a CPF is monitored per origin peer, and compared against the configured limit.

Once the CPF receives more traffic than the configured limit, messages that are sent towards it are not processed. The SDC can either return a busy result code for these messages or silently discard them. For more information about configuring the incoming rate limit, see the *F5 SDC User Guide*.

https://techdocs.f5.com/content/kb/en-us/products/traffix-sdc/manuals/product/sdc-overload-control-overview-4-4-0/_jcr_content/pdfAttach/download/file.res/sdc-overload-control-overview-4-4-0.pdf , Exhibit I

Additionally, F5 also has indirectly infringed and continues to indirectly infringe by inducing others, including network operators and services providers, to perform this step. For instance, F5 has actively induced infringement by encouraging the use of the Accused Instrumentalities to perform this step. F5 knew or should have known that such encouragement would induce infringement. Such induced infringement has occurred at least since F5 became aware of the Asserted Patent. F5 has had knowledge of the Asserted Patent at least since the date when a complaint was filed in the Eastern District of Virginia. Such steps by F5 to induce infringement have included F5's advertising, promoting, marketing, making available for use, offering to sell, and/or selling the Accused Instrumentalities to others, and directing and instructing them to use the Accused Instrumentalities to perform this step. Further, by providing the Accused Instrumentalities (*e.g.,* F5 Traffix Signaling Delivery Controllers; VIPRION Platform and products; F5 BIG-IP iSeries platform and products) to consumers, F5 has induced others to perform this step with the knowledge that the acts it has induced constitute infringement because, for instance, F5 has been aware that network operators and services providers will use them, resulting in direct infringement. (*See, e.g.,*
https://techdocs.f5.com/content/kb/en-us/products/traffix-sdc/manuals/product/sdc-user-5-1-0/_jcr_content/pdfAttach/download/file.res/sdc-user-5-1-0.pdf, Exhibit A; Exhibits B-D;
https://techdocs.f5.com/content/kb/en-us/products/traffix-sdc/manuals/product/sdc-product-description-4-4-0/_jcr_content/pdfAttach/download/file.res/sdc-product-description-4-4-0.pdf, Exhibit E.)

Further, F5 has indirectly infringed and continues to indirectly infringe the claim by contributing to performance of this step. For instance, components of each Accused Instrumentality are known by F5 to be especially made or especially adapted for use in performing this step, and each is not a staple article or commodity of commerce suitable for substantial non-infringing uses. F5 contributes to the performance of this step by making available for use,

21

| Claims | Infringement Analysis with Exemplary Infringement Evidence |
|---|---|
| | offering for sale, selling, and/or importing components of the Accused Instrumentalities (*e.g.,* F5 Traffix Signaling Delivery Controllers; VIPRION Platform and products; F5 BIG-IP iSeries platform and products) to third parties, who, for example, use such components to perform this step.  (*See, e.g.,* https://www.f5.com/products/big-ip-services, Exhibit A; https://www.f5.com/products/big-ip-services/policy-enforcement-manager, Exhibit B; https://www.f5.com/pdf/products/big-ip-policy-enforcement-manager-datasheet.pdf, Exhibit K; https://www.f5.com/pdf/products/big-ip-platforms-datasheet.pdf, Exhibit M.)  Moreover, F5 has had notice of the Asserted Patent at least as of the filing date of a complaint in the Eastern District of Virginia. |
| **11e.**<br>wherein determining the reduction percentage is based, at least in part, on available central processing unit memory. | On information and belief, the Accused Instrumentalities (*e.g.,* F5 Traffix Signaling Delivery Controllers; VIPRION Platform and products; F5 BIG-IP iSeries platform and products) enable determining the reduction percentage is based, at least in part, on available central processing unit memory, as shown by the above exemplary evidence and further exemplary evidence below.<br><br>For instance, F5 SDC can enter an overload condition due to various reasons including unexpected memory demands, or CPU or other resource utilization that exceed the engineered capacity of F5 SDC.  The overload control mechanisms such as configuring the rate limits assure that in the event of an overload, traffic processing continues with minimal disruption.  The overload control mechanisms used in F5 SDC control limit resource usage and allocation, as exemplified below.<br><br>There are multiple possible reasons for overload, such as signaling storms caused by faulty peers, unexpected memory demands, or CPU or other resource utilizations that exceed the engineered capacity of the SDC. The implemented overload control mechanisms assure that in the event of an overload, traffic processing continues with minimal disruption.<br><br>These mechanisms control and limit the resource usage and allocation, by controlling the number of incoming/outgoing message requests and traffic rates per destination peer.<br><br>https://techdocs.f5.com/content/kb/en-us/products/traffix-sdc/manuals/product/sdc-overload-control-overview-4-4-0/_jcr_content/pdfAttach/download/file.res/sdc-overload-control-overview-4-4-0.pdf, Exhibit I |

| Claims | Infringement Analysis with Exemplary Infringement Evidence |
|---|---|
| | Further, F5 SDC can monitor the CPU and memory usage for the connected FEP and CPF components.  Based on the information and belief, SDC can adjust the traffic and determines the reduction percentage based on the available central processing unit memory, as shown by exemplified evidence below.

<strong>Table 62: SDC Components Table Columns</strong>

| Column | Description |
|---|---|
| Node | The name of the site that the data is presented for. |
| CPU Usage (%) | The percentage of CPU used by the host running the CPF and FEP components. |
| Used Memory | The memory (in MB) that the CPF and FEP components consumed. |

https://techdocs.f5.com/content/kb/en-us/products/traffix-sdc/manuals/product/sdc-user-5-1-0/_jcr_content/pdfAttach/download/file.res/sdc-user-5-1-0.pdf, Exhibit A

Additionally, F5 also has indirectly infringed and continues to indirectly infringe by inducing others, including network operators and services providers, to perform this step.  For instance, F5 has actively induced infringement by encouraging the use of the Accused Instrumentalities to perform this step.  F5 knew or should have known that such encouragement would induce infringement.  Such induced infringement has occurred at least since F5 became aware of the Asserted Patent.  F5 has had knowledge of the Asserted Patent at least since the date when a complaint was filed in the Eastern District of Virginia.  Such steps by F5 to induce infringement have included F5's advertising, promoting, marketing, making available for use, offering to sell, and/or selling the Accused Instrumentalities to others, and directing and instructing them to use the Accused Instrumentalities to perform this step.  Further, by providing the Accused Instrumentalities (*e.g.,* F5 Traffix Signaling Delivery Controllers; VIPRION Platform and products; F5 BIG-IP iSeries platform and products) to consumers, F5 has induced others to perform this step with the knowledge that the acts it has induced constitute infringement because, for instance, F5 has been aware that network operators and services providers will use them, resulting in direct infringement.  (*See, e.g.,* https://techdocs.f5.com/content/kb/en-us/products/traffix-sdc/manuals/product/sdc-user-5-1- |

| Claims | Infringement Analysis with Exemplary Infringement Evidence |
|---|---|
| | 0/_jcr_content/pdfAttach/download/file.res/sdc-user-5-1-0.pdf, Exhibit A; Exhibits B-D; https://techdocs.f5.com/content/kb/en-us/products/traffix-sdc/manuals/product/sdc-product-description-4-4-0/_jcr_content/pdfAttach/download/file.res/sdc-product-description-4-4-0.pdf, Exhibit E.) |
| | Further, F5 has indirectly infringed and continues to indirectly infringe the claim by contributing to performance of this step.  For instance, components of each Accused Instrumentality are known by F5 to be especially made or especially adapted for use in performing this step, and each is not a staple article or commodity of commerce suitable for substantial non-infringing uses.  F5 contributes to the performance of this step by making available for use, offering for sale, selling, and/or importing components of the Accused Instrumentalities (*e.g.,* F5 Traffix Signaling Delivery Controllers; VIPRION Platform and products; F5 BIG-IP iSeries platform and products) to third parties, who, for example, use such components to perform this step.  (*See, e.g.,* https://www.f5.com/products/big-ip-services, Exhibit A; https://www.f5.com/products/big-ip-services/policy-enforcement-manager, Exhibit B; https://www.f5.com/pdf/products/big-ip-policy-enforcement-manager-datasheet.pdf, Exhibit K; https://www.f5.com/pdf/products/big-ip-platforms-datasheet.pdf, Exhibit M.)  Moreover, F5 has had notice of the Asserted Patent at least as of the filing date of a complaint in the Eastern District of Virginia. |
| | |
| **Claim 12** | |
| The method according to claim 11, wherein said overload status is based, at least in part, on the quality of service offered by the gateway. | On information and belief, the Accused Instrumentalities (*e.g.,* F5 Traffix Signaling Delivery Controllers; VIPRION Platform and products; F5 BIG-IP iSeries platform and products) enable the practice of the method according to claim 11, wherein said overload status is based, at least in part, on the quality of service offered by the gateway, as shown by the exemplary evidence below. |
| | For instance, F5 SDC provides mechanisms for resource management and congestion control that protect both F5 SDC and the connected peer nodes from overload conditions.  The overload conditions are determined and controlled by the incoming/outgoing message/traffic rate of F5 SDC, as shown below. |

**Citation 2: F5 SDC Overload and Congestion Control**

| | | |
|---|---|---|
| Overload and Congestion Control | SDC provides multiple mechanisms for resource management and congestion control that protect SDC and the connected Peer nodes from overload conditions, by controlling and limiting the resources usage and allocation, e.g. controlling the incoming/outgoing message/traffic rate. The implemented methods are based on message oriented flow control, traffic shaping algorithms and load shedding algorithms. | |

Fig. 3

https://techdocs.f5.com/content/kb/en-us/products/traffix-sdc/manuals/product/sdc-feature-list-4-4-0/_jcr_content/pdfAttach/download/file.res/sdc-feature-list-4-4-0.pdf, Exhibit F

In addition to direct infringement of this claim by F5 (including its employees), F5 also has indirectly infringed and continues to indirectly infringe by actively inducing others, including network operators and services providers, to directly infringe this claim by using the Accused Instrumentalities.  For instance, F5 has actively induced infringement by encouraging the use of the Accused Instrumentalities (*e.g.,* F5 Traffix Signaling Delivery Controllers; VIPRION Platform and products; F5 BIG-IP iSeries platform and products) in ways that infringe this claim.  F5 knew or should have known that such encouragement would induce infringement.  Such induced infringement has occurred at least since F5 became aware of the Asserted Patent.  F5 has had knowledge of the Asserted Patent at least since the date when a complaint was filed in the Eastern District of Virginia.  F5 has taken active steps with the specific intent to encourage and cause others to use each Accused Instrumentality in ways that infringe this claim.  Such active steps by F5 with specific intent to induce infringement have included, among other things, advertising, promoting, marketing, making available for use, offering to sell, and/or selling the Accused Instrumentalities to others; encouraging and influencing other companies to import, offer to sell, and/or sell the Accused Instrumentalities; and directing and instructing others to use the Accused Instrumentalities in infringing ways.  F5 has performed the aforementioned active steps with the knowledge of the Asserted Patent at least since the date when a complaint was filed in the Eastern District of Virginia.  F5 has known or should have known that the acts

25

| Claims | Infringement Analysis with Exemplary Infringement Evidence |
|---|---|
| | it has induced constitute infringement because, for instance, it has been aware that network operators and service providers that purchase the Accused Instrumentalities will use them, resulting in direct infringement. (*See, e.g.,* https://techdocs.f5.com/content/kb/en-us/products/traffix-sdc/manuals/product/sdc-user-5-1-0/_jcr_content/pdfAttach/download/file.res/sdc-user-5-1-0.pdf, Exhibit A; Exhibits B-D; https://techdocs.f5.com/content/kb/en-us/products/traffix-sdc/manuals/product/sdc-product-description-4-4-0/_jcr_content/pdfAttach/download/file.res/sdc-product-description-4-4-0.pdf, Exhibit E.)<br><br>Further, F5 has indirectly infringed and continues to indirectly infringe this claim by contributing to infringement of this claim.  For instance, components of the Accused Instrumentalities (*e.g.,* F5 BIG-IP Policy Enforcement Manager (PEM); F5 VIPRION platform and products; F5 BIG-IP iSeries platform and products) are known by F5 to be especially made or especially adapted for use to infringe this claim, and each is not a staple article or commodity of commerce suitable for substantial non-infringing uses.  F5 contributes to the infringement of this claim by making available for use, offering for sale, selling, and/or importing the components of the instrumentalities, to third parties, who, for example, use such components to practice this claim.  (*See, e.g.,* https://techdocs.f5.com/content/kb/en-us/products/traffix-sdc/manuals/product/sdc-user-5-1-0/_jcr_content/pdfAttach/download/file.res/sdc-user-5-1-0.pdf, Exhibit A; Exhibits B-D; https://techdocs.f5.com/content/kb/en-us/products/traffix-sdc/manuals/product/sdc-product-description-4-4-0/_jcr_content/pdfAttach/download/file.res/sdc-product-description-4-4-0.pdf, Exhibit E.)  Moreover, F5 has had notice of the Asserted Patent at least as of the filing date of a complaint in the Eastern District of Virginia. |
| **Claim 14** | |
| The method according to claim 11, further comprising:<br><br>identifying incoming high priority calls like emergency calls; and granting priority for said high priority calls preventing them from being blocked. | On information and belief, the Accused Instrumentalities (*e.g.,* F5 Traffix Signaling Delivery Controllers; VIPRION Platform and products; F5 BIG-IP iSeries platform and products) enable identifying incoming high priority calls like emergency calls; and granting priority for said high priority calls preventing them from being blocked, as shown by the exemplary evidence below.<br><br>For instance, Message Prioritization can be configured for a pool of peers connected to the SDC. The traffic sent to the server by the SDC is prioritized until the overloaded state for the server peers is cleared.  The SDC processes the message requests based on the priority, with high priority being processed first, then medium, and then low.  Message prioritization optimizes the message request processing in overloaded peers within a pool, as exemplified below. |

26

### 3.3.8.2 Configuring Message Prioritization

Message Prioritization optimizes request processing in overloaded peers within a pool.

When Message Prioritization is configured for a pool, the SDC processes requests based

on their priority, with high priority being processed first, then medium, and then low.

https://techdocs.f5.com/content/kb/en-us/products/traffix-sdc/manuals/product/sdc-user-5-1-0/_jcr_content/pdfAttach/download/file.res/sdc-user-5-1-0.pdf, Exhibit A

### 2.3.4 Overload Protection Improvements

SDC 5.1 improves the server overload protection provided by the SDC. The state of each

server is constantly monitored by a series of KPIs. Once a server is detected as overloaded,

traffic sent to the server is prioritized until the overloaded state is cleared.

https://techdocs.f5.com/content/kb/en-us/products/traffix-sdc/releasenotes/product/relnote-sdc-5-1-0/_jcr_content/pdfAttach/download/file.res/sdc-relnote-5-1-0.pdf, Exhibit G

In addition to direct infringement of this claim by F5 (including its employees), F5 also has indirectly infringed and continues to indirectly infringe by actively inducing others, including network operators and services providers, to directly infringe this claim by using the Accused Instrumentalities. For instance, F5 has actively induced infringement by encouraging the use of the Accused Instrumentalities (*e.g.,* F5 Traffix Signaling Delivery Controllers; VIPRION Platform and products; F5 BIG-IP iSeries platform and products) in ways that infringe this claim. F5 knew or should have known that such encouragement would induce infringement. Such induced infringement has occurred at least since F5 became aware of the Asserted Patent. F5 has had knowledge of the Asserted Patent at least since the date when a complaint was filed in the Eastern District of Virginia. F5 has taken active steps with the specific intent to encourage and cause others to use each Accused Instrumentality in ways that infringe this claim. Such active steps by F5 with specific intent to induce infringement have included, among other things, advertising, promoting, marketing, making available for use, offering to sell, and/or selling the Accused Instrumentalities to others; encouraging and influencing other companies to import, offer to sell, and/or sell the Accused Instrumentalities; and directing and instructing others to use the Accused Instrumentalities in infringing ways. F5 has performed the aforementioned active steps with the knowledge of the Asserted Patent at least since the date when a complaint was filed in the Eastern District of Virginia. F5 has known or should have known that the acts

27

| Claims | Infringement Analysis with Exemplary Infringement Evidence |
|---|---|
| | it has induced constitute infringement because, for instance, it has been aware that network operators and service providers that purchase the Accused Instrumentalities will use them, resulting in direct infringement. (*See, e.g.,* https://techdocs.f5.com/content/kb/en-us/products/traffix-sdc/manuals/product/sdc-user-5-1-0/_jcr_content/pdfAttach/download/file.res/sdc-user-5-1-0.pdf, Exhibit A; Exhibits B-D; https://techdocs.f5.com/content/kb/en-us/products/traffix-sdc/manuals/product/sdc-product-description-4-4-0/_jcr_content/pdfAttach/download/file.res/sdc-product-description-4-4-0.pdf, Exhibit E.)<br><br>Further, F5 has indirectly infringed and continues to indirectly infringe this claim by contributing to infringement of this claim. For instance, components of the Accused Instrumentalities (*e.g.,* F5 BIG-IP Policy Enforcement Manager (PEM); F5 VIPRION platform and products; F5 BIG-IP iSeries platform and products) are known by F5 to be especially made or especially adapted for use to infringe this claim, and each is not a staple article or commodity of commerce suitable for substantial non-infringing uses. F5 contributes to the infringement of this claim by making available for use, offering for sale, selling, and/or importing the components of the instrumentalities, to third parties, who, for example, use such components to practice this claim. (*See, e.g.,* https://techdocs.f5.com/content/kb/en-us/products/traffix-sdc/manuals/product/sdc-user-5-1-0/_jcr_content/pdfAttach/download/file.res/sdc-user-5-1-0.pdf, Exhibit A; Exhibits B-D; https://techdocs.f5.com/content/kb/en-us/products/traffix-sdc/manuals/product/sdc-product-description-4-4-0/_jcr_content/pdfAttach/download/file.res/sdc-product-description-4-4-0.pdf, Exhibit E.) Moreover, F5 has had notice of the Asserted Patent at least as of the filing date of a complaint in the Eastern District of Virginia. |
| **Claim 17** | |
| The method according to claim 11, wherein performing an audit sequence in response to the trigger includes said trigger being based, at least in part, on quality of service. | On information and belief, the Accused Instrumentalities (*e.g.,* F5 Traffix Signaling Delivery Controllers; VIPRION Platform and products; F5 BIG-IP iSeries platform and products) enable the practice of the method according to claim 11, wherein performing an audit sequence in response to the trigger includes said trigger being based, at least in part, on quality of service, as shown by the exemplary evidence below.<br><br>For instance, F5 SDC can be configured to perform an audit restore sequence in response to the system detected to be overloaded. Based on information and belief, the overload status raises a trigger in response to which the audit sequence is performed, as shown below. |

| | Previously, when the system is overloaded, and you performed an audit restore (**Administration > Audit > Restore**), some of the configurations may not have been restored as expected. Now, the audit functionality works as expected. |

https://techdocs.f5.com/content/kb/en-us/products/traffix-sdc/releasenotes/product/relnote-sdc-5-1-0/_jcr_content/pdfAttach/download/file.res/sdc-relnote-5-1-0.pdf, Exhibit G

As another example, the overload conditions are determined and controlled by the incoming/outgoing message/traffic rate (quality of service) of F5 SDC, as shown below.

| Overload and Congestion Control | SDC provides multiple mechanisms for resource management and congestion control that protect SDC and the connected Peer nodes from overload conditions, by controlling and limiting the resources usage and allocation, e.g. controlling the incoming/outgoing message/traffic rate. The implemented methods are based on message oriented flow control, traffic shaping algorithms and load shedding algorithms. |

https://techdocs.f5.com/content/kb/en-us/products/traffix-sdc/manuals/product/sdc-feature-list-4-4-0/_jcr_content/pdfAttach/download/file.res/sdc-feature-list-4-4-0.pdf, Exhibit F

In addition to direct infringement of this claim by F5 (including its employees), F5 also has indirectly infringed and continues to indirectly infringe by actively inducing others, including network operators and services providers, to directly infringe this claim by using the Accused Instrumentalities. For instance, F5 has actively induced infringement by encouraging the use of the Accused Instrumentalities (*e.g.,* F5 Traffix Signaling Delivery Controllers; VIPRION Platform and products; F5 BIG-IP iSeries platform and products) in ways that infringe this claim. F5 knew or should have known that such encouragement would induce infringement. Such induced infringement has occurred at least since F5 became aware of the Asserted Patent. F5 has had knowledge of the

29

| Claims | Infringement Analysis with Exemplary Infringement Evidence |
|--------|-----------------------------------------------------------|
|        | Asserted Patent at least since the date when a complaint was filed in the Eastern District of Virginia.  F5 has taken active steps with the specific intent to encourage and cause others to use each Accused Instrumentality in ways that infringe this claim.  Such active steps by F5 with specific intent to induce infringement have included, among other things, advertising, promoting, marketing, making available for use, offering to sell, and/or selling the Accused Instrumentalities to others; encouraging and influencing other companies to import, offer to sell, and/or sell the Accused Instrumentalities; and directing and instructing others to use the Accused Instrumentalities in infringing ways.  F5 has performed the aforementioned active steps with the knowledge of the Asserted Patent at least since the date when a complaint was filed in the Eastern District of Virginia.  F5 has known or should have known that the acts it has induced constitute infringement because, for instance, it has been aware that network operators and service providers that purchase the Accused Instrumentalities will use them, resulting in direct infringement.  (*See, e.g.,* https://techdocs.f5.com/content/kb/en-us/products/traffix-sdc/manuals/product/sdc-user-5-1-0/_jcr_content/pdfAttach/download/file.res/sdc-user-5-1-0.pdf, Exhibit A; Exhibits B-D; https://techdocs.f5.com/content/kb/en-us/products/traffix-sdc/manuals/product/sdc-product-description-4-4-0/_jcr_content/pdfAttach/download/file.res/sdc-product-description-4-4-0.pdf, Exhibit E.)<br><br>Further, F5 has indirectly infringed and continues to indirectly infringe this claim by contributing to infringement of this claim.  For instance, components of the Accused Instrumentalities (*e.g.,* F5 BIG-IP Policy Enforcement Manager (PEM); F5 VIPRION platform and products; F5 BIG-IP iSeries platform and products) are known by F5 to be especially made or especially adapted for use to infringe this claim, and each is not a staple article or commodity of commerce suitable for substantial non-infringing uses.  F5 contributes to the infringement of this claim by making available for use, offering for sale, selling, and/or importing the components of the instrumentalities, to third parties, who, for example, use such components to practice this claim.  (*See, e.g.,* https://techdocs.f5.com/content/kb/en-us/products/traffix-sdc/manuals/product/sdc-user-5-1-0/_jcr_content/pdfAttach/download/file.res/sdc-user-5-1-0.pdf, Exhibit A; Exhibits B-D; https://techdocs.f5.com/content/kb/en-us/products/traffix-sdc/manuals/product/sdc-product-description-4-4-0/_jcr_content/pdfAttach/download/file.res/sdc-product-description-4-4-0.pdf, Exhibit E.)  Moreover, F5 has had notice of the Asserted Patent at least as of the filing date of a complaint in the Eastern District of Virginia. |